## Briggs *et al.* versus Large *et al.*

Goods stored with a warehouseman in the way of trade, are not liable to be distrained for arrears of rent owing by the bailee.

Where such goods were distrained for rent due by the warehouseman, the latter had no authority to waive an appraisement and notice of sale. And the landlord having sold the same without appraisement and notice, is liable to the owner in an action of trover.

Caldcleugh v. Hollingsworth, 8 *W. & S.* 303, explained.

ERROR to the District Court of *Philadelphia.*

This was an action of trover, by John Briggs & Co. against James Large and John Large, for five casks of madder, of the value of $1445.38.

In the summer of 1856, A. S. Lippincott, a commission merchant, in Philadelphia, received on consignment from the plaintiffs below, 90 casks of madder. It was a regular part of his business, as a commission merchant, to receive madder on consignment. Not having a warehouse of his own, after applying at several places, he succeeded in obtaining storage for the madder with Robert B. Sellers & Co., in a warehouse rented by them from the defendants; and which was strongly built with express reference to the storage of heavy articles, and had always, with the defendants' knowledge, been used for storing the goods of others.

In October 1856, the defendants distrained upon five casks of the madder, for rent in arrear, owing to them by Robert Sellers & Co. After the distress was made, Sellers, the tenant, begged for a delay of the sale, saying he would try to raise the money for the rent; which request was granted, upon Sellers' signing his name to an agreement that the levy should be permitted to remain in full force until the rent should be paid, that nothing should be removed, and that the madder might be sold if the rent was not paid on or before November 13th 1856. Sellers, also, on the same paper, agreed at different times to several postponements of the sale, and the sale took place November 21st.

*Sellers* testified that he had distinctly stated to one of the defendants, before the sale (and he thought also to one of the bailiffs) that the madder did not belong to him (Sellers), but was left at that store on storage by A. S. Lippincott, and that he supposed

[Briggs *et al. v.* Large *et al.*]

it belonged to Lippincott; he also testified that there was no appraisement at all of the madder.

*George Gerhart,* Sellers' clerk, testified that Large, some time previous to the sale, inquired of him to whom the madder belonged, and he (witness) answered that it belonged to A. S. Lippincott; that Large replied that Sellers didn't pay up the rent, and he (Large) would have to distrain these goods, and that Large frequently was there and inquired about it.   This witness also testified that there was no appraisement whatever, and no public notice of sale either upon the premises or in the neighbourhood, although he took particular pains to see.   It was also in proof, that Sellers said to one of the bailiffs, that he would not have an appraisement.

The plaintiffs' counsel requested the court to charge the jury as follows :—

1. That if the jury find that the goods distrained and sold at the store No. 65 North Wharves, belonged to the plaintiffs, and had been placed in that store on storage, in the way of trade, the verdict must be for the plaintiffs.

2. That if the jury find that the goods distrained and sold by the defendants, were the property of the plaintiffs; that A. S. Lippincott had received them in the course of business, and had stored them in the store of defendants, or either of them, because he had not storage room of his own; they were exempt from distress as if they had been in a store rented by Lippincott for his own business; and defendants are liable for distraining and selling them, and the verdict must be for the plaintiffs.

3. That if the jury find that there was an omission on the part of the defendants, or their bailiffs, to appraise the goods distrained and sold, or an omission to give public notice of the sale, or both, the defendants are liable, and the verdict must be for the plaintiffs.

4. (The 4th point was withdrawn.)

5. That if the defendants knew that the goods were there on storage, and were not the property of Sellers, they are not exempted from liability by any agreement with Sellers, the tenant.

The court below delivered the following charge to the jury :—

" The evidence in this case shows that the building in which the goods (for the taking of which this suit is brought) were stored, was a warehouse for the storage of the goods of others than the tenant.   The tenant is shown to have been in the forwarding business.   These goods of the plaintiffs were not, therefore, originally liable to distress for rent.

" I charge you also that if there is an omission to appraise or give public notice, as a general rule of law, the landlord is a trespasser, and liable as such for taking them.

" The question then arises whether the course of proceedings in

[Briggs *et al. v.* Large *et al.*]

the distress and sale in this case, was not of such a character as to preclude the plaintiffs from recovering.

"The evidence is that the knowledge of the distress was brought home to the tenant; that the sale was postponed at his request and with his consent; that the tenant agreed to the waiver of appraisement, which was according to his agreement omitted. So far, therefore, as the tenant is concerned, he would be absolutely precluded from contesting the validity or legality of the distress and sale. The question then remains whether the acts of the tenant bind the plaintiffs, and my instruction to you upon this point will determine your verdict.

"I think the decision of the Supreme Court in Caldcleugh *v.* Hollingsworth, 8 *W. & S.* 303, leaves me no choice as to this question. I instruct you that when the plaintiffs placed their goods on storage in the store rented by Sellers, he became their agent, by whose acts they must stand or fall. If the tenant, having waived notice of the distress and sale, omitted to notify the plaintiffs, the defendants were not bound to supply this omission, and the failure of the plaintiffs to claim the goods in due season precludes them from recovering against the Messrs. Large for such distraining and selling.

"The same principle applies to another branch of the case, viz.: the omission to appraise. If the tenant waived, or agreed to dispense with the appraisement, such waiver or agreement is binding upon the plaintiffs, and it makes no difference, in either of these aspects of the case, that the defendants knew that the goods belonged to the plaintiffs, or that they knew to whom they belonged, and that they were not Sellers' property.

"There are, therefore, only two questions of fact for your decision in this case: 1. Whether the tenant Sellers had notice of the distress and sale; and 2. Whether the tenant agreed to waive the appraisement and want of notice. If you find these questions affirmatively, your verdict must be for defendants.

"I refuse to affirm plaintiffs' first point, as the principle of law which I have already stated renders it unnecessary to apply it.

"The same remark applies to the plaintiffs' second point. I have already stated that the goods were originally exempt from distress, but not being claimed at the time, plaintiffs cannot recover.

"As to the plaintiffs' third point, I answer that it is absolutely necessary that there should be an appraisement of goods distrained and sold; but, as I have before stated, the assent of the tenant to the omission to appraise, precludes the owners of the goods from taking advantage of it. The same applies as to want of public notice, if any.

"The fourth point has been withdrawn.

"As to the plaintiffs' fifth point, I decline to affirm it."

There was a verdict and judgment for the defendants below,

[Briggs *et al. v.* Large *et al.*]

whereupon the plaintiffs sued out this writ, and here assigned for error the answers of the learned judge to the points submitted on the trial.

*Gerhart*, for the plaintiffs in error.—The plaintiffs' goods were not liable to be distrained for the rent due by the bailee : Brown *v.* Sims, 17 *S. & R.* 138 ; Riddle *v.* Welden, 5 *Wh.* 17 ; Gilman *v.* Elton, *B. & B.* 75 ; Thompson *v.* Mashiter, 1 *Bingh.* 283 ; Matthias *v.* Mesnard, 2 *C. & P.* 253.

The common law remedy by distress is now wholly regulated by the Act of 21st March 1772. This statute gives the landlord power to sell only *after* the making of the appraisement, and the giving of public notice which it directs. If he omits to comply with these requisitions, he becomes a trespasser *ab initio :* Kerr *v.* Sharp, 14 *S. & R.* 403 ; Quinn *v.* Wallace, 6 *Wh.* 460.

A critical examination of the case of Caldcleugh *v.* Hollingsworth, 8 *W. & S.* 303, will show that it does not sustain the ruling of the court below.' The powers of an agent are strictly circumscribed within the object and purpose for which he is empowered : 1 *Am. Lead. Cas.* 566, 567, 661 ; Lecky *v.* McDermott, 8 *S. & R.* 500 ; Rapp *v.* Palmer, 3 *Watts* 179.

*G. W. Biddle*, for defendants in error.—The judge below was guided in his charge by the opinion of this court in the case of Caldcleugh *v.* Hollingsworth, 8 *W. & S.* 302, which appears, in all its essential features, to be identical with the case now under consideration. Now, as the late Chief Justice GIBSON said in that case, 8 *W. & S.* 303, the object of the *notice* required by the statute, is to prevent the landlord from being involved in unforeseen difficulties ; he has a right to suppose that the property found on the demised premises is subject to distress for the rent in arrear, and he is not bound to put faith in a statement of the tenant that the property so found does not belong to him, and is privileged from being distrained upon.

The opinion of the court was delivered by

THOMPSON, J.—The learned judge of the District Court instructed the jury, that goods stored in a warehouse used for the storage of goods of others as well as those of the tenant, as in the case before the court, are not liable to distress for rent. In this he was fully sustained by our own cases of Brown *v.* Sims, 17 *S. & R.* 138, and Riddle *v.* Welden, 5 *Watts* 17 ; and by the current of English decisions on the point. This was substantially an answer to the plaintiffs' first point.

He also charged " That an omission to appraise and give notice of the sale of goods distrained for rent, would, as a general rule of law, render the landlord liable in seizing them." This is un-

[*Briggs et al. v. Large et al.*]

disputed law. But at this point, a departure from what we conceive to have been the true course, took place. After referring to the facts, that notice of the distress had been given to Sellers, the tenant—that he had agreed to waive the appraisement and notice—and that the sale had been postponed several times—he added, "That when the goods were placed in the store of the tenant, he became their agent, by whose acts they must stand or fall." "That waiver of appraisement, or agreement so to do, by Sellers, the tenant, was binding upon the plaintiffs, and it made no difference in either aspect of the case that the defendants knew that the goods belonged to the plaintiffs, or that they knew to whom they belonged, and that they were not Sellers' property." And that the only questions for the jury were, "1. Whether the tenant, Sellers, had notice of the distress and sale? and, 2. Whether the tenant agreed to waive the appraisement and want of notice? If you find these questions affirmatively, your verdict must be for the defendants."

This is the substance of the material part of the charge, as well as of the assignments of error. The learned judge seemed to think that the case of Caldcleugh v. Hollingsworth, 8 *W. & S.* 303, left him no choice but to charge as he did. But he certainly carried the doctrine of the case greatly beyond its teachings. It is an authority for giving notice of distress to the tenant, and that it is his business to transmit it to the owner, "whose agent *for that purpose* he may be considered." This was only in affirmance of what is required by the Landlord and Tenant Act of 1772, so far as notice is concerned, with the announcement of the duty resting upon the tenant superadded, to give the notice to the owner, being the bailee of the property and bound to take care of it. The decision goes no farther; and it was an error to rely on it as extending the agency of the tenant to an almost unlimited control of the property of the plaintiffs, in his possession as a bailee for hire. It was no authority to him, to consent to or waive essentials in process. The Act of 1772 requires an appraisement of goods distrained for rent, before being sold, so that excessive distress may not be made; and this is absolutely essential to a valid sale, and can only be dispensed with by the owner, or some one having equivalent authority. It is not contended in this case that there was such waiver by the owner, but that it was waived by Sellers, the tenant. Had he the power to do so? He had no other control over, or agency in the property, than that which arose out of his relation to it, as bailee to keep safely for hire, and to receive and transmit notice of the distress, as we have already seen, as tenant. This was the utmost extent of his agency. The defendants were bound to know this. Persons dealing with agents, must look to their authority: Baring v. Peirce, 5 *W. & S.* 548. And when there is no express authority, then it

[Briggs *et al. v.* Large *et al.*]

is to be ascertained and construed by reference to the purpose of the agency : 1 *Am. L. Cas.* 574. The landlord shutting his eyes to all this, and to the fact that the property did not belong to the tenant, but to others, and that it was stored, in the course of business, in a building leased for a warehouse by himself, seized the goods in the warehouse, gave the tenant notice of the seizure—although the consignee lived in the city, and did business within a few squares—procured from him a written waiver of appraisement and notice of sale. This the tenant had no authority whatever to do: his act was utterly void; and the omission to have the property appraised according to law, rendered the defendants liable and answerable in damages to the plaintiffs for the goods so sold; and to this effect should the jury have been instructed.

It is evident, that the waiver of appraisement was not sought for and obtained, for the mere purpose of economizing time or expense in making the sale; for this would be too trifling to enter into the consideration. Besides, the expense would come out of the property sold. A more important object was in view. The madder being stored, as it was, in the course of trade, and known to the landlord not to belong to the tenant, was not previously liable to seizure for rent, but if seized, this exemption might be waived by the owners, or an agent having the authority to do so; and this would be effectually accomplished by waiving appraisement and notice of sale. The owners not being present, and not likely to consent, if they had been, to a sacrifice of their property to pay the debts of the tenant, no such waiver was obtained from them. The only other chance was, to procure it from the tenant; and it was procured from him on the assumption that his agency enabled him to do, what the owners could do in the premises, to render the property liable. This lay at the foundation of the landlord's proceedings; without this his seizure was an unquestionable trespass, and his sale a conversion of the goods. But the tenant having no sort of authority to waive a compliance with the requirements of the law, his act did not remedy the defect; it was void, and the property remained as it did before, exempt from seizure for the rent. To affirm the act of the tenant in doing what was attempted in this case, and enable him to render property liable in his possession, circumstanced as this property was, would be to give to every such bailee the power of disposition over it, without even the formality of process, in the payment of rent due his landlord; a result which the law tolerates not for an instant: Lecky *v.* McDermott, 8 *S. & R.* 500; Rapp *v.* Palmer, 3 *Watts* 179; 1 *Am. L. Cas.* 661.

The errors assigned to the charge, with the exception of the first and second, are sustained; and the judgment must be reversed.

Judgment reversed and *venire facias de novo* awarded.