## Mortgage B. & L. Association v. Van Sciver et al., Appellants.

Argued May 13, 1931. Before Frazer, C. J., Wall-ing, Simpson, Kephart, Schaffer and Maxey, JJ.

410

 

 

*Ralph S. Croskey*, with him *George J. Edwards, Jr.*, for Purdy B. Moyer, appellant.—A sheriff's levy upon goods distrained for rent stays the constable's sale and if the constable sells notwithstanding the levy the sale passes no title: Sookiasian v. Swift & Co., 100 Pa. Superior Ct. 69; Edward's App., 105 Pa. 103; Bush, Bunn & Co.'s App., 65 Pa. 363; Vetter's App., 99 Pa. 52; Sheble v. Strong, 128 Pa. 315; Hyde v. Kiehl, 183 Pa. 414; Donnelly v. Pub. Serv. Com., 268 Pa. 345; Reese v. Adamson, 276 Pa. 253; Donahue v. Boro., 298 Pa. 77; Cordingly v. Kelly, 276 Pa. 374.

A tenants' waiver of appraisement does not bind a bailor owner or his assignee: Rieker v. Koechling, 4 Pa. Superior Ct. 286; Schmidt v. Bader, 284 Pa. 41; Packard Motor Car Co. v. Mazer, 77 Pa. Superior Ct. 348; Eagle v. Kunkle, 278 Pa. 190; Etnier v. Pascoe, 275 Pa. 308.

A constable's sale in distraint passes no title where (a) there is no proof of an appraisement by two reputable freeholders, (b) the appraisement was made by three appraisers, (c) two appraisers received for an appraisement taking less than a day $1.00 each: McElroy v. Dice, 17 Pa. 163; Davis v. Davis, 128 Pa. 100; Murphy v. Chase, 103 Pa. 260; Walter v. Jenkins, 92 Pa. Superior Ct. 526; Pickering Co. v. Lutz, 67 Pa. Superior Ct. 479; Brisben v. Wilson, 60 Pa. 452; Com. v. Abrams, 94 Pa. Superior Ct. 556; Sookiasian v. Swift & Co., 100 Pa. Superior Ct. 69.

*Conard & Middleton,* for J. B. Van Sciver Company, appellant.

*Isaac Hassler,* with him *Joseph H. Sundheim,* for appellee.—That an assignee (even a bona fide one) cannot sue or claim in his own name but the case must be brought by the assignor to use of the assignee, is settled law: Bunting v. R. R., 81 Pa. 254.

Everything on the premises is liable to the landlord's distress and rent, and the $7,500 rent in arrears to the building association and not fully realized is first, both by distress and by a preference given by the law: Moss's App., 35 Pa. 162; Morgan v. Moody, 6 W. & S. 333; Parker & Keller's App., 5 Pa. 390; McCombs & Howden's App., 43 Pa. 435.

Official sales though under a junior levy instead of on the superior levy which should have sold, have always been upheld: Murphy v. Chase, 103 Pa. 260; Com. v. Abrams, 94 Pa. Superior Ct. 556.

The Van Sciver Company is not permitted to levy on the goods as the goods of the defendant and claim out of its own levy that the goods are not the goods of the defendant nor can it do this by the device of a pretended transfer: Edward's App., 105 Pa. 103; Hanbest v. Heerman, 2 Walker 471; Hunter Construction Co. v. Lyons, 233 Pa. 561; Bare v. Wenrich, 17 Pa. Dist. 279; Delp v. Hoffman, 7 Pa. Dist. 256; Com. v. Conter, 21 Pa. 266; Bisk Candy Co. v. Stout, 289 Pa. 369.

OPINION BY MR. JUSTICE SIMPSON, June 27, 1931:

Without requiring a formal issue to be prepared and filed, the trial judge directed that this sheriff's interpleader should be tried with the Mortgage Building & Loan Association as plaintiff, and the New Irving Hotel Company, Inc., J. B. Van Sciver & Co. and Purdy B. Moyer, as defendants; and each of the parties (except the Hotel Company, which took no part in the proceedings) produced evidence to sustain its or his contention.

When the evidence was closed, the trial judge, with the consent of all the parties, so far as regards the character of the reservations, directed a verdict for plaintiff subject to the following points reserved: "1. Whether or not this levy was good; whether it was defective as to the appraisers and the sale was thereby vitiated?", and "2. Whether the execution levied by the sheriff stayed the constable's writ, and relegated the landlord to a claim against the fund, and, if so, whether or not that right of the Mortgage Building and Loan Association, as landlord, to claim against the fund raised by the sheriff, has been lost by a waiver?" Appellants excepted to the direction to find a verdict for plaintiff, and subsequently separately moved for judgment in their favor on the points reserved, and for a new trial. The court in banc dismissed all their motions; judgment was entered on the verdict and they severally appealed.

In order to understand the case properly, it is necessary to set forth the exact status of the respective parties at the time of the trial. Plaintiff is the owner of the hotel where the goods distrained on were located, and the Hotel Company is its tenant. The rent being in arrears, a distraint was made on those goods, which resulted in a constable's sale thereof to plaintiff. Van Sciver & Co., one of appellants, had formerly owned the goods, but had leased them to the Hotel Company, by a written agreement under which the latter paid $500 down and agreed to pay $500 each month for twenty-three months, after which it had the right to purchase the goods on paying to Van Sciver & Co. the further sum of $5,000; the title to the goods to remain in the latter until the final payment was made. After the goods had been valued by appraisers appointed by the constable, and three days after the advertisement of the constable's sale had begun,—which was also three days before the time fixed for that sale—Van Sciver & Co., for an expressed consideration of $1, purported to transfer to Purdy B. Moyer, the other appellant, "all its title and

reversionary interest in the said property [leased by Van Sciver & Co. to the Hotel Company] more fully set forth in the said lease, subject, however, to the right of possession of the said lessee, the New Irving Hotel, Inc., during the term of the said lease, reserving unto itself, however, the right to receive from the New Irving Hotel, Inc., the rental for the said property during the term of said lease." The next day, which was two days before the time fixed for the constable's sale, Van Sciver & Co., purporting to act in accordance with one of the terms of that lease, entered a judgment against the New Irving Hotel Company, Inc., for $9,783.63, being the unpaid balance of all the monthly payments until the end of the twenty-three months (though but eight months had elapsed) and issued execution thereon. The deputy sheriff testified that he went to the hotel and made a levy under the fi. fa., but did not notify the constable's agent, who he knew was in possession of the goods under the distraint. It is alleged, however, that later in the same day he telephoned the constable not to go on with the sale, but gave no reason why this should not be done, and, on the day and at the time of the sale, another deputy sheriff appeared at the hotel and told the constable that he "was sent there by the sheriff's solicitor to warn him that if he conducted his constable's sale there that he would do it at his peril," but did nothing to interfere with the holding of the sale. The sale proceeded accordingly, the goods realizing $8,000, which appellant Moyer admitted was a fair price for them.

The day after the sale Moyer notified the sheriff, as against the execution on the Van Sciver judgment, that he was the owner of the goods, and later on plaintiff did likewise. Upon each of these claims a sheriff's interpleader was allowed; Moyer filed his statement of claim, Van Sciver & Co. and plaintiff each filed an affidavit of defense, and upon the issues thereby raised the case was ordered for trial. No other pleadings were filed, and no other issue raised; but the case was tried in the

way required by the trial judge, as hereinbefore set forth, his conclusion evidently being based on the fact that as plaintiff had retained possession of the goods by reason of the previous order of that court which we had affirmed (J. B. Van Sciver Co. v. New Irving Hotel, Inc., 298 Pa. 463), it should properly be called upon to maintain its right in the first instance. As the record then stood, plaintiff claimed title to the goods by virtue of the constable's sale; Moyer claimed title to them by virtue of the assignment from Van Sciver & Co.; Van Sciver & Co., by its affidavit of defense asserted "that the title to the property claimed by Purdy B. Moyer and the Mortgage Building and Loan Association, is in the New Irving Hotel, Inc."; and the latter, ground to death between these millstones, made no claim whatever.

Plaintiff's distraint was of course made under section 1 of the Act of March 21, 1772, 1 Sm. L. 370, which provides as follows: "That, from and after the publication of this act, where any goods or chattels shall be distrained for any rent reserved and due, upon any demise, lease or contract whatsoever, and the tenant or owner of the goods so distrained shall not, within five days next after such distress taken, and notice thereof, with the cause of such taking, left at the mansion-house, or other most notorious place on the premises charged with the rent distrained for, replevy the same, with sufficient security to be given to the sheriff, according to law, that then, and in such case, after such distress and notice as aforesaid, and expiration of the said five days, the person distraining shall and may, with the sheriff, under-sheriff, or constable in the city or county where such distress shall be taken (who are hereby required to be aiding and assisting therein) cause the goods and chattels so distrained to be appraised by two reputable freeholders, who shall have and receive for their trouble the sum of two shillings *per diem each, and shall first take the following oath or affirmation: *"I, A. B. will

---

* The statute italicizes these words.

*well and truly, according to the best of my understanding, appraise the goods and chattels of C. D. distrained on for rent by E. F.* Which oath or affirmation such sheriff, under-sheriff or constable, are hereby empowered and required to administer; and after such appraisement shall or may, after six days public notice, lawfully sell the goods and chattels so distrained for the best price that can be gotten for the same, for and towards satisfaction of the rent for which the said goods and chattels shall be distrained, and of the charges of such distress, appraisement and sale, leaving the overplus, if any, in the hands of the said sheriff, under-sheriff or constable, for the owner's use."

It has sometimes been thoughtlessly said that, in all the proceedings from the distraint up to and including the sale, the sheriff, under-sheriff or constable is acting in no other capacity than as agent of the distrainer, and that no more effect can be given to his acts than would be given to that of any other person who was acting as such agent. As will be noticed, the statute draws a clear distinction between the act of distraint, with the service of notice thereof on the tenant, and the later steps taken in the distraint proceedings, and so we have recognized whenever the matter has been passed upon by this court. Thus, in Wells v. Hornish, 3 P. & W. 30, 33, we said: "In case of a distress by a landlord, for rent due in arrear, if the tenant or owner of the goods should not, within the space of five days after such distress taken, replevy the goods, they are, under the Act of Assembly of the 21st of March, 1772, to be appraised; at which the sheriff or under-sheriff, or a constable, must be present, aiding and assisting, and †*not before.* So if any other than the sheriff, under-sheriff, or constable, be made bailiff, and distrain the goods of the tenant, such an officer must be called in to the appraisement of the goods, and to superintend and conduct the sale of them in all cases as directed by this act." In McElroy v. Dice, 17 Pa. 163, 169, where both the

---

† These italics appear in the opinion quoted from.

owner and the constable were held liable for an excessive distress, we said "the constable is not bound to make a distress for rent . . . the law only requires his interference, †*after* the distress made, should an appraisement and sale become necessary." So, too, in Murphy v. Chase, 103 Pa. 260, where it was sought to establish the rule that there was a presumption of regularity in the distraint and all that followed it, we said, at page 262: "The general rule is that an officer of the law is presumed to have done his duty. So, when a public officer has done an act which should be preceded by certain preliminary steps, it will be presumed they were taken. All these presumptions, however, must be limited to his acts as an officer. They do not apply to his precedent acts done as an agent. Hence in this case it was incumbent upon the plaintiff to prove that notice of the distress with the cause of such taking was given to the tenant before the appraisement was made. Having wholly failed to prove this, the sale was invalid." The Superior Court has reached the same conclusion. In Walter v. Jenkins, 92 Pa. Superior Ct. 526, 528, it is said: "A sheriff or constable is not bound to make a distress for rent, for all the duties imposed upon them by statute are those which follow the distress, or those which relate to appraisement and sale, should that become necessary as is prescribed by Act of March 21, 1772." And, in Com. v. Abrams, 94 Pa. Superior Ct. 556, 558, "A constable who distrains goods under a landlord's warrant is not an officer of the law, but the agent of the landlord merely, until an appraisement has been made and the legal processes provided by the statute call for a sale of the property distrained." Under our cases above quoted, the opinion last cited is too limited in its scope. It should have stated, under the language of the Act of 1772 and our cases construing it, that a constable begins to act as an officer of the law when an appraisement is required.

---

† These italics appear in the opinion quoted from.

It follows that, as all the acts of the constable in this case, after the distress made and notice thereof, were done virtute officii, a rebuttable presumption of regularity arises as to them, and in that light we must consider the argument made by appellants on the reserved points. Upon the first thereof, viz., "Whether or not the levy was good; whether it was defective as to the appraisement and the sale was thereby vitiated?", appellants attempt to broaden its scope so as to include three points: (1) Was the appraisement void because made by three appraisers, instead of two, the number specified in the statute?; (2) Was it void because the two appraisers were paid $1 each, instead of the two shillings specified in the statute?; and (3) Was it void because not made, as appellants aver, by two reputable freeholders? In answer to these objections it would be sufficient, perhaps, to say that the presumption of regularity would necessarily carry the case to the jury on each of these questions, but we prefer to go a little further. The rule of strict construction is subject to at least two other considerations: the objection to the proceedings must be a reasonable one, and must refer to a matter directly affecting the sale which is to follow, and not to something which is merely collateral thereto. For instance, if the second of the above objections was valid, it would be rare indeed that a sale under a distress could legally be made. The "two shillings" referred to in the statute are, of course, Pennsylvania shillings, which can probably be found in museums or other numismatic collections only. If they were English shillings, the situation would be only slightly better, for, under the argument made on this point, to pay too much or too little would be alike fatal to the proceedings, and no American currency can exactly measure one-twentieth of an English pound, which is normally worth about $4.86, but whose value varies from day to day, depending on the rate of exchange. The only relief

would be to purchase, in each case, four English shillings to pay the appraisers.

So, too, the objection that there were three appraisers instead of two is equally futile. The act requires that the goods shall "be appraised by two reputable freeholders." That another joined with them in making the appraisement does not alter the fact that the goods were "appraised by two reputable freeholders." We said in Briggs v. Large, 30 Pa. 287, 291, that the purpose of an appraisement was "so that excessive distress may not be made." In many instances, the appraisers, in order to make an accurate appraisement to comport with that purpose, would have to call in the assistance of people acquainted with the value of some of the articles distrained, as, for instance, an animal of a rare breed, articles of value only because of their age, and the like. If we concede the statement in Snyder v. Boring, 4 Pa. Superior Ct. 196, 199, that "An appraisement by three persons was irregular," it would be far from admitting that this would avoid a later sale. If a landlord does all and more than the law requires, the later proceedings will not be vitiated, unless that "more" is forbidden or does harm. Here neither is true.

Upon the question as to whether or not the appraisers were "reputable freeholders," a remarkable difference of opinion exists. Appellants say that there is no evidence that they were, and appellee says that all the evidence shows that they were. We find that there was evidence on both sides of the question, that of appellee being supported by the presumption of regularity accorded to the acts of the constable. Appellants' assent to the reserved questions would probably estop them from raising this point, but for their exception to the direction to find in favor of appellee. We have, therefore, an important issue of fact, which has not been determined by the only tribunal authorized to pass upon it.

The second of the reserved points raises another interesting question, viz., "Whether the execution levied

by the sheriff stayed the constable's writ, and relegated the landlord to a claim against the fund, and, if so, whether or not that right of the Mortgage Building and Loan Association, as landlord, to claim against the fund raised by the sheriff has been lost by a waiver?" The second half of this question may be passed over; there never was any "fund raised by the sheriff," nor can there ever be on that execution, which was long since returned by the sheriff to the court out of which it was issued.

Were the first of those questions to be raised in proceedings taken after the Act of May 7, 1929, P. L. 1589, was passed, that statute would answer it: the constable would have had to withdraw, and the landlord would have had to make his claim upon the fund raised by the sheriff's sale. The proceedings under this distraint were all before that Act, however, and the question is as to the law before its passage. So far as we are advised, the general practice, elsewhere than in Philadelphia, unquestionably was for the constable to withdraw and let the sheriff proceed. In Sookiasian v. Swift & Co., 100 Pa. Superior Ct. 69, 74, where a similar situation arose, the Superior Court said: "So, in this case, the sheriff's levy having been made on January 14, 1929,— *and it does not appear that the constable had by then posted any notice of his proposed sale of the goods*—the Act of 1836 afforded the landlord full protection and he could have secured payment of his claim for rent by notifying the sheriff of his claim and looking to the proceeds of the sale. This has been the practice for years out of mind." In the instant case, however, the constable "had posted notice of the proposed sale of the goods" before the execution was issued—an exception probably made because of the better understanding of the Act of 1772 as hereinbefore shown. No statute requires the constable to withdraw, and the need for one, if withdrawal is to be required, was recognized by the legislature in the passage of the Act of 1929, supra.

After he has begun, under the Act of 1772, to act in his official capacity, in Philadelphia,—where this distraint and sale were had,—the practice was to proceed with the sale, unless the court out of which the execution issued made an order to the contrary. No such order was made in this case. The wisdom of this conclusion was evident in cases where the execution is issued against one of several conflicting claimants as to the ownership of the goods levied on. To compel a landlord to withdraw under such circumstances might well result in his losing his rent. Leaving the matter under the control of the court which issues the execution, insures exact justice to all conflicting interests, so far as this is possible in human affairs.

Moreover, no further proceedings can ever be had under the fieri facias issued by Van Sciver & Co. By an order of the court below, which we sustained on the prior appeal, the sheriff was directed to withdraw all levies and attachments on the goods distrained upon, on plaintiff filing a bond conditioned to prosecute its claim with effect or "pay the value of the goods to such person as shall finally be determined to be entitled thereto." That bond was entered and the sheriff thereupon returned his writ. The issue thus directed is not limited to a right arising after a constable's sale, but may apply in favor of whoever had the better claim, however arising.

Appellee further contends that we should affirm the judgment because the record clearly discloses that appellants, Van Sciver & Co. and Moyer, were wrongfully endeavoring, under legal forms, to deprive appellee of its just rights. Evidently the court below in banc so thought, for in its opinion it said: "The assignment [from Van Sciver & Co. to Moyer] was hence made in bad faith." Moyer's own evasive testimony would seem to justify a trier of the facts in so finding. Van Sciver & Co.'s affidavit, above quoted, excluded all idea of claiming ownership under the agreement between them

and the Hotel Company. To this status they are bound in all later proceedings: Edward's Appeal, 105 Pa. 103; Vetter's Appeal, 99 Pa. 52, 55; Hyde v. Kiehl, 183 Pa. 414, 429; Reese v. Adamson, 276 Pa. 253, 255. If, then, Van Sciver & Co. is masquerading under the name of their employee, Moyer, and has asserted ownership of the goods in the Hotel Company, as the record shows it did, then the only question at issue is, has the landlord a better right to recover his rent out of the proceeds of the goods on the premises, than has an execution creditor? To this question only one answer is possible; but however clearly the court below may have thought that Moyer was but a sham claimant, we are faced with the situation that the alleged fact is not admitted and the jury did not find it to be true.

The judgment of the court below is reversed and a venire facias de novo awarded.