Darlene RAGIN, on behalf of herself and all others similarly situated, Plaintiffs,

v.

Allan SCHWARTZ, Constable, et al., Defendants.

Civ. A. No. 74–390.

United States District Court, W. D. Pennsylvania.

April 15, 1975.

Lewis M. Taffer, Neighborhood Legal Services, Pittsburgh, Pa., for plaintiff.

John M. Duff, Deputy Atty. Gen., Pa. Dept. of Justice, Pittsburgh, Pa., for defendants.

David R. Levin, Pittsburgh, Pa., for amicus curiae.

Before ALDISERT, Circuit Judge, and TEITELBAUM and SNYDER, District Judges.

OPINION AND ORDER

SNYDER, District Judge.

This is an action for declaratory judgment and injunctive relief challenging the constitutionality of those portions of Article III of the Pennsylvania Landlord and Tenant Act of 1951 (The Act) which authorize a landlord's seizure and sale of a tenant's property for unpaid rent without prior notice or opportunity to present a defense.[1] We find those portions of Article III violate Due Process requirements and will grant the requested relief.

On July 30, 1973, Darlene Ragin entered into a written lease agreement for an apartment with Allegheny Commons East Associates, through its agent, Regional Sales, Inc., for a term of twelve months, at a monthly rental of $171.50, payable in advance. On April 20, 1974,

1. Jurisdiction exists under 28 U.S.C. § 1343(3) and (4).

after default in the payment due April 1, 1974, Mrs. Ragin found posted on her front door a "Notice of Distraint" which stated as follows:

## "NOTICE OF DISTRAINT

To _____ Darlene Ragin _____

You are hereby notified that by authority and on behalf of your Landlord, Regional Sales Inc. I have this day distrained the several goods and chattels specified in the inventory hereto annexed the same being ALL THE GOODS AND CHATTELS LOCATED AT Ally Common apt. 112F in Pittsburgh County of Ally and State of Pennsylvania, for arrearages of rent due 1st day of April and unpaid for the amount of 171.50 Dollars; and if you do not pay the same, together with the costs of this proceeding, or replevy said goods and chattels according to law, within five days hereafter, I shall cause the said goods and chattels to be appraised, and proceed to sell the same, according to the Act of Assembly in such case made and provided.

Given under my hand, this 20th day of April, 1974

RENT PER MONTH:  171.50  /s/ Allan Schwartz

OTHER CHARGED:  Constable

2569 PARK HILL DRIVE–PGH., PA. 15221 – 731–5701"

---

Attached to the Notice was an inventory list of property distrained which included various items of furniture from the kitchen, living room and bedroom.

On April 24, 1974, Judge Hubert I. Teitelbaum of this Court issued a Temporary Restraining Order enjoining Constable Schwartz from selling Mrs. Ragin's property. At the Hearing for Preliminary Injunction on April 26, 1974, the Temporary Restraining Order was dissolved on the assurances of Constable Schwartz that he would not sell the property in question, and at that time a request was made for the convening of a Three Judge Court pursuant to Title 28, Section 2281.[2] The Plaintiff promptly moved for an Order that the Action be maintained as a Rule 23(b)(2), F.R.Civ.P., Class Action,[3] with the Class to be "all residents of Allegheny County, Pennsylvania, who rent their residences and who, therefore, are subject to a levy and/or sale authorized by Article III, Section 302, et seq. of the Pennsylvania Landlord and Tenant Act

2. Section 2281, 28 U.S.C. provides:

*"Injunction against enforcement of State statute; three-judge court required*

An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

3. Rule 23(b)(2) provides:

*"Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\*    \*    \*    \*    \*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; . . . ."

of 1951, 68 P.S. § 250.302, et seq." On July 30, 1974, the Class was certified. Counsel for the Plaintiffs then moved for Summary Judgment. Argument was held thereon by the Three Judge Court on September 16, 1974, at which time counsel for the Commonwealth of Pennsylvania orally moved for a Cross-Motion for Summary Judgment. Shortly thereafter, a member of the Class, Dorothy R. Ashcraft, moved for a Temporary Restraining Order against Constable Schwartz to restrain the threatened sale of her property and the levying upon, distraining, or selling of the property of any and all members of the Class. This Order was granted.

The Act (68 P.S. § 250.101 et seq.), effective April 6, 1951, provides, in broad outline, for Article I, "Preliminary Provisions"; Article II, "Creation of Leases; Statute of Frauds; Mortgaging of Leaseholds"; Article III, "Recovery of Rent by Assumpsit and Distress"; Article IV, "Exemptions from Distress and Sale"; Article V, "Recovery of Possession".

The power to distrain is delineated by § 250.302, as follows:

*"Power to distrain for rent; notice*

Personal property located upon premises occupied by a tenant shall, unless exempted by article four of this act, be subject to distress for any rent reserved and due. Such distress may be made by the landlord or by his agent duly authorized thereto in writing. Such distress may be made on any day, except Sunday, between the hours of seven ante meridian and seven post meridian and not at any other time, except where the tenant through his act prevents the execution of the warrant during such hours.

Notice in writing of such distress, stating the cause of such taking, specifying the date of levy and the personal property distrained sufficiently to inform the tenant or owner what personal property is distrained and the amount of rent in arrears, shall be given, within five days after making the distress, to the tenant and any other owner known to the landlord, personally, or by mailing the same to the tenant or any other owner at the premises, or by posting the same conspicuously on the premises charged with the rent.

A landlord or such agent may also, in the manner above provided, distrain personal property located on the premises but only that belonging to the tenant, for arrears of rent due on any lease which has ended and terminated, if such distress is made during the continuance of the landlord's title or interest in the property."

The tenant is given five days within which he may bring an action of replevin for the goods (§ 250.306), and also may bring an action to compel the landlord to set-off any account which the tenant may have against such landlord. In this latter action, the Court may determine the amount of rent in arrears and the amount of the set-off, if any, and enter judgment in favor of the proper party (§ 250.307), with the option in the landlord if he prevails to execute on such judgment or proceed with the distress.

The Act further provides in § 250.-307:

". . . If the landlord shall sell more personal property than necessary to satisfy such judgment and costs and fail to pay the overplus to the tenant, he shall be liable in trespass to double the amount of the sum so detained, together with the costs of suit. If the landlord shall proceed to sell any personal property after notice of any such proceeding to defalcate and before judgment in his favor thereon, he shall be liable in trespass to double the amount by which the sum realized from such sale exceeds the sum to which he shall be found to be entitled by the final judgment in the defalcation proceeding, together with the costs of suit in the defalcation pro-

ceeding, if such judgment be in his favor."

If the owner of the personal property fails to replevy within five days after the distress and notice thereof, appraisement must be made of the personal property distrained upon (§ 250.308), after which the Sheriff or Constable shall fix a date, time and place for sale, giving at least six days public notice in writing by hand bills. On that date and time, the selling officer must publicly sell the property and apply the proceeds of the sale in accordance with the fixed statutory priority relating to payment of any wages due by the tenant, payment of the charges and costs of making the distress, appraisement and sale, and finally, the satisfaction distrained, with any overplus then going for the use of the owner (§ 250.309).

Under the provisions of 42 U.S.C. § 1983,[4] Congress has given redress for acts "under color of any statute" of any State where there is a deprivation "of any rights, privileges, or immunities secured by the Constitution." Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).[5] *See also*, North Georgia Finishing v. Di-Chem, 419 U.S. 601, 95 S.Ct. 719, 42 L. Ed.2d 751 (1975); Mullane v. Central Hanover B. & T. Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Opp Cotton Mills Inc. v. Administrator, 312 U.S. 126, 152–153, 61 S.Ct. 524, 85 L.Ed. 624 (1941).

Time and time again the Supreme Court of the United States has dealt with the question of what constitutes "the right to be heard" [Schroeder v. New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962)] within the meaning of procedural due process. (Mullane v. Central Hanover B. & T. Co., *supra*). Thus, in *Sniadach, supra,* referring to *Mullane, supra,* Mr. Justice Douglas, speaking for seven members of the Court, stated (395 U.S. at 339, 89 S.Ct. at 1822, (23 L.Ed.2d at 352–353):

". . . In the latter case we said that the right to be heard 'has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce, or contest. . . .'"

In the context of this case, the question is whether the seizure of property without a chance to be heard violates this procedural due process? While there is available to the tenant the Trespass Action, the Replevin Action, and the Action for Defalcation, just as in *Sniadach, supra,* the tenant here is deprived of the unfettered use of property during the interim between the Distraint and the outcome of any of these actions. In many instances these actions themselves involve court costs and collection fees which make the entire process a taking of one's property where there is the need of the less affluent for the protection provided by the Constitution. *Cf.* Coe v. Armour Fertilizer Works, 237 U.S. 413, 35 S.Ct. 625, 59 L. Ed. 1027 (1915) (holding unconstitutional a Florida statute which permitted, after a return of *nolla bona* on an execution against a corporation, issuance of an execution against a stockholder for the amount of the unpaid subscription to the stock he holds, without prior notice to him or other preliminary steps).

4. 42 U.S.C., § 1983 provides:

"*Civil action for deprivation of rights*

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

5. *Sniadach, supra,* held unconstitutional the Wisconsin prejudgment garnishment procedure whereby a defendant's wages are frozen in the interim between the garnishment of the wages and the culmination of the main suit without the defendant having a chance to be heard.

The Plaintiffs have shown that the Constable in this case acted pursuant to The Act, as the Distraint Notice itself indicates and, without prior notice, entered the Plaintiff's premises and made a physical levy on the property as set forth in the Inventory. This indeed is an adequate basis for finding the provisions of Article III of The Act to be violative of the Fourteenth Amendment. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), rehearing denied, 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165; *Sniadach, supra. Cf.* Santiago v. McElroy, 319 F.Supp. 284 (E.D. Pa.1970) (civil rights action by low income tenants in which a Three Judge Court held that distress sales under The Act of 1951 amounted to a taking of property without due process where no hearing was held before the tenant was deprived of his property, but refused to find State action in the original levy when there was no evidence there that the defendants ever entered onto the plaintiff's leasehold to make the levy). *See also,* Gross v. Fox, 349 F.Supp. 1164 (E.D.Pa.1972), reversed on procedural grounds, 496 F.2d 1153 (3d Cir. 1974).

■ There is sufficient State involvement in the levy and the sale because a State official performed the sale, *e. g.,* Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Here, the public official has power to act only because he is an official, and thus performs "under color of law" as required by 42 U.S.C. § 1983. Mortgage Building & Loan Ass'n. v. J. B. Van Sciver & Co., 304 Pa. 408, 416, 155 A. 920 (1931).

The United States Supreme Court since *Sniadach, supra,* has rendered a series of decisions striking prejudgment remedies which fail to provide prior notice and an opportunity for a hearing to determine the validity of the creditor's claim. Thus, in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), Welfare Authorities adopted procedures whereby the recipient of Welfare, after informal discussion with the caseworker, was given at least seven days' notice of proposed termination of payments with the right to submit a written statement. Procedural due process was held to require evidentiary hearings before termination and a post-termination hearing did not meet the requirements. In Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), the Court struck down the Georgia motor vehicle safety responsibility statute providing for suspension of motor vehicle registration and driver's license, if an uninsured motorist was involved in an accident and failed to post security for the amount of damages claimed by the aggrieved party, irrespective of fault.

■ We believe, in light of Fuentes v. Shevin, *supra,* where the Court held that (407 U.S. at p. 82, 92 S.Ct. at p. 1995) " . . . an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest" (as applied to Pennsylvania and Florida prejudgment Replevin statutes), and of Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), making exceptions only when " . . . the seizure has been directly necessary to secure an important governmental or general public interest" (as applied by a Puerto Rican statute to the seizure of vessels engaged in drug traffic), it is sufficient here to emphasize that the landlord-tenant situation involves self interested private parties and not important governmental concerns. *Cf.* Ewing v. Mytinger & Casselberry, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (a statute authorized seizure of misbranded drugs); Coffin Bros. & Co. v. Bennett, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1926) (bank failure followed by execution on holders of bank stock in order to pay depositors); United States v. Pfitsch, 256 U.S. 547, 41 S.Ct. 569, 65 L.Ed. 1084 (1921) (requisition of a radial drill to aid in the war effort); North American Cold Storage Co. v. Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (seizure and de-

struction of food in cold storage when allegedly unfit for human consumption).

Moreover, the general tenor of the distraint statute before us is not unlike that of the Georgia garnishment statute voided in North Georgia Finishing v. Di-Chem, *supra*. There, in distinguishing Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), the Supreme Court stated, 419 U.S. at p. 607, 95 S.Ct. at p. 722, 42 L.Ed.2d at p. 757):

> "The Georgia garnishment statute has none of the saving characteristics of the Louisiana statute. The writ of garnishment is issuable on the affidavit of the creditor or his attorney, and the latter need not have personal knowledge of the facts. . . . The affidavit, like the one filed in this case, need contain only conclusory allegations. The writ is issuable, as this one was, by the court clerk, without participation by a judge."

We thus hold that in the instant case and in accord with the great weight of authority,[6] that The Act here involved is violative of Due Process requirements and the Plaintiffs' suit, founded on Section 1983, is solidly supported by the law.

Finding as we do, it is not necessary to, nor do we, indicate any position on the Plaintiffs' contention that Article III also provides for unreasonable search and seizure by its distraint procedures when no intervention of a judicial officer is provided before entry may be made.

The foregoing shall constitute the Findings of Fact and Conclusions of Law as provided for in Rule 52(a) of the Federal Rules of Civil Procedure, and an appropriate Order will be entered granting the Plaintiffs' Motion for Summary Judgment, but denying Defendants' Cross-Motion for Summary Judgment in accordance with the foregoing Opinion.

---

6. Hall v. Garson, 468 F.2d 845 (5th Cir. 1972) and 430 F.2d 430 (5th Cir. 1970); Adams v. Sanson, 376 F.Supp. 61 (D.Nev.); Jenkins v. Halloran (C.A. 72–1477) (D.S.C., 3/22/73); Barber v. Rader, 350 F.Supp. 183 (S.D.Fla.1972); MacQueen v. Lambert, 348 F.Supp. 1334 (M.D.Fla.1972); Shaffer v. Holbrook, 346 F.Supp. 762 (S.D.W.Va. 1972); Dielen v. Levine, 344 F.Supp. 823 (D.Neb.1972); Holt v. Brown, 336 F.Supp. 2 (W.D.Ky.1971); Blocker v. Blackburn, 228 Ga. 285, 185 S.E.2d 56 (1971).

Also, Gross v. Fox, *supra;* Musselman v. Spies, 343 F.Supp. 528 (M.D.Pa.1972); Sellers v. Contino, 327 F.Supp. 230 (E.D.Pa. 1971); Santiago v. McElroy, *supra.*