## McCumber v. Arduini

*Robert Jeffrey,* for plaintiff.
*James Richardson,* for defendant.

PFADT, *J.,* November 6, 1980—George V. McCumber, plaintiff in the above-captioned complaint in replevin, has moved for partial summary judgment in a case arising from the distraint of household goods in a residential lease situation. Plaintiff seeks the return of his belongings prior to a trial on the merits.

Defendant herein is the landlord and plaintiff in an assumpsit suit springing from the identical fact

situation. He seeks damages in that case under the lease, including a reimbursement of costs for storage of the goods distrained.

McCumber has moved for consolidation of the two cases, and the defendant herein opposes this motion as well as the motion for partial summary judgment. Both motions will be granted.

The landlord has argued that the motion for partial summary judgment on the replevin case may not be granted because of a factual dispute. On the pleadings of the replevin case, it appears that McCumber rented an apartment at 2324 East 43rd Street, Erie, Pa., under a written lease executed in December, 1977, with a rental obligation of $285. Apparently, the lease was renewed for an additional year at $295, although plaintiff has denied a second signing of the lease. On July 6, 1979 the lock on plaintiff's apartment was changed and a note was left on the door requesting plaintiff to contact an agent for defendant regarding rent arrearages. Inside the apartment were several rooms of furniture, personal belongings, appliances, clothes, etc. Plaintiff attached to this complaint in replevin a list of property which is valued at nearly $9,000. Defendant's answer states only an inability to answer the allegation, and in further answer, states that no inventory had been conducted of the property seized.

Subsequent to the distraint on July 6, 1979 several brusque letters passed between the parties, including one of August 13, 1979 where defendant demanded $1,650 to satisfy the rental arrearage and costs incident to the distraint. However, it appears that no steps to appraise or sell the property have ever been taken. Fifteen months have passed since the seizure and defendant continues to hold it.

On January 11, 1980 the landlord sent a 45 day notice to the tenant, terminating the lease arrangement for the apartment to which the tenant had had no access for five months.

The landlord justifies his opposition to summary judgment on the basis of disputed facts, i.e., that the tenant vacated or abandoned the apartment prior to the change of locks in July, 1979. Under the lease, goods may be distrained if left in an abandoned apartment. Defendant's answer, paragraph 15, states:

"From May 1, 1979 through July 6, 1979, the Defendant made several and various unsuccessful attempts to contact and locate the Plaintiff to secure delinquent rental payments.

"16. By July 6, 1979, the Defendant had sufficient and justifiable grounds to conclude that the Plaintiff had vacated and abandoned the apartment as well as any property located therein and, in fact, the plaintiff had vacated and abandoned the apartment and property located therein."

However, we find that the defendant cannot now claim that the apartment was abandoned or vacated because his initial reason for the distraint was nonpayment of rent.

Defendant bases his actions on a common law right that is allegedly independent of the statute and noncontractual in nature. By this approach, defendant intends to avoid the constitutional challenges to the statute which have caused several Federal district courts to deem distraint provisions unconstitutional. See, e.g., Ragin v. Schwartz, 393 F. Supp. 152 (W.D. Pa. 1975); Litton Business Systems, Inc. v. Paul L'Esperance, Inc., 387 F. Supp. 1265 (E.D. Pa. 1975); Musselman v. Spies, 343 F.

Supp. 528 (M.D. Pa. 1972); Gross v. Fox, 349 F. Supp. 1164 (E.D. Pa. 1972), vacated and remanded on other grounds, 496 F. 2d 1153 (3d Cir. 1974). According to defendant, the unconstitutionality relates exclusively to impermissive state involvement in the sale of the distressed goods, and not to the actual seizure of the goods which is allegedly a private act. Plaintiff argues that the act of distraint is itself violative of the Fourteenth Amendment, and several Supreme Court decisions support his contention: Sniadach v. Family Finance Corp. of Bay View, 395 U.S. 337 (1969); Fuentes v. Shevin, 407 U.S. 67 (1972). Cf. Lindsey v. Normet, 405 U.S. 56 (1972); Parks v. "Mr. Ford," 556 F. 2d 1332 (3d Cir. 1977). See, also, Van Ness Industries, Inc. v. Claremont Painting & Decorating Co., 129 N.J. Super. 507, 515, 324 A. 2d 102, 106 (1974), where a statutory scheme similar to the law in Pennsylvania was struck down in its entirety, as well as the common law because of "invalid procedural methods." However, our solution to the instant case need not rest on constitutional ground and the court declines to decide those issues raised.

The landlord's right to distraint has been recognized in Pennsylvania for centuries and subject to statute since the Act of March 1, 1772, 1 Sm.L. 370, 68 P.S. §251 et seq. However, The Landlord and Tenant Act of April 6, 1951, P.L. 69, as amended, 68 P.S. §250.101 et seq., purports to integrate the law as enunciated by case law, common law and prior amendment:

"§250.602 General repeal All other acts and parts of acts, general, local and special, inconsistent with or supplied by this act, are hereby repealed. It is intended that this act shall furnish a complete and exclusive system in itself." Thus, the

procedures of the act, insofar as they are not unconstitutional, must be considered obligatory. Since this case can be decided on solely statutory grounds, it is unnecessary to gauge the more ephemeral common law right of distraint in light of the most recent pronouncements of the legislature on landlord-tenant law. See Utility Service Tenants Rights Act of November 26, 1978, P.L. 1255, 68 P.S. §399.1 et seq., and Mobile Home Park Rights Act of November 24, 1976, P.L. 1176, 68 P.S. §398.1 et seq.

In order to take advantage of the right of distraint, defendant must comply with the still valid sections .of the distraint provisions and the defendant has failed in several notable regards. First, section 250.302 states the following:

"Personal property located upon premises occupied by a tenant shall, *unless exempted by article four of this act,* be subject to distress for any rent reserved and due. . . .

"Notice in writing of such distress, *stating the cause of such taking,* specifying the date of levy and the personal property distrained sufficiently to inform the tenant or owner what personal property is distrained and the amount of rent in arrears, shall be given, within five days after making the distress, to the tenant and any other owner known to the landlord, personally, or by mailing the same to the tenant or any other owner at the premises, or by posting the same conspicuously on the premises charged with, the rent." (Emphasis supplied.)

On July 6, 1979, when the landlord seized the plaintiff's property, the following note was left:

"Vic McCumber                          July 6, 1979
Your lock has been changed. Do not try to enter.

Please contact manager at once. For reason of non payment of rent due for 3 months.
Manager (Northview Heights)
D. Arduini"

Thus, we find that since at the time of seizure defendant claimed the distraint was for nonpayment of rent, defendant cannot now shift his theory of distraint to that of abandonment.

Defendant's failure to comply with section 250.302 is not confined to arguably waivable defects on the face of the quoted notice, as, for example, the failure to explicitly state the amount of rent arrearage, but rather, defendant's noncompliance goes right to the heart of the statute. The landlord's right to distraint, whether by statute or common law, is mitigated by the tenant's right of exemption as specified in sections 250.401, 250.402, 250.403, and 250.404. Among the items seized are clothes and household furnishings that are clearly within the exemptions provided by the act. For 15 months, defendant has held the property without specifying what property was subject to the distraint and what might be returned. By defendant's failure to provide such a list, even though under a duty to do so under the statute, defendant cannot complain at this time that plaintiff is valuing excessively the property seized or that some listed property was not seized at all.

While the statutory language uses the permissive "may" with regard to the landlord's right of seeking appraisal and sale (sections 250.308 and .309 respectively), nothing in the act justifies an indefinite seizure of a tenant's property without appraisal. This conclusion is necessary in light of the remedies available under section 250.312, where defendant herein has arguably violated subsections

(1) through (5). This section penalizes a landlord for a seizure of property that is too great or oppressive. The distraint of clothes and other items subject to exemptions is clearly within the ambit of this provision. The court must assume that this section was drafted to restrain a landlord's actions and cannot be avoided by the very actions it was designed to prohibit. The intent of section 250.312 always would be defeated if a landlord at his leisure and discretion could seize valuable property far in excess of rent due from an impecunious tenant and simply hold it until interest, "storage costs," and other charges equal the value of the property seized. This practice is especially sharp since the dispossessed tenant must devote some portion of his available funds to replace necessities. Inasmuch as the landlord's distraint appears to be indefinite in duration, it frustrates the provisions above despite their overall intent to resolve controversies.

One approach to the act which gives effect to all its provisions rests upon a careful definition of the landlord's act of distraint. Under Pennsylvania law, the posting of the notice of distraint and the listing of property distrained upon is sufficient to preserve the landlord's inchoate interest in the tenant's personal property. Notably, section 250.311, Damages for removal of property distrained on, provides treble damages where a tenant has unlawfully removed property distressed by the landlord. The provision thus contemplates continual physical possession of the property with the tenant following the landlord's distraint. We conclude that the posting of the notice is the extent of the distraint that is authorized under the act. This conclusion is borne out by section 250.401 which states: "The *officer* charged with the execution of any landlord's warrant shall, if requested by the tenant, summon two

disinterested and competent persons. . . ." (Emphasis supplied.) Since section 250.302 also speaks of a warrant that may be served by the landlord or his agent, it is clear that the act implicitly contemplates a more formal procedure when the tenant is actually dispossessed of personal property as occurs when the levy in section 250.401 takes place.

In the instant case, the change of locks effectively seized the property without the formal requisites which we have concluded are necessary in order that section 250.312 and the exemptions sections may be effective. It follows that the property seized must be returned, but in fairness to the parties, an inventory must be made and provided to them both. The court recognizes that the very sections which authorize action by either constables or sheriffs are considered constitutionally infirm, and that as a practical effect, no physical seizure of a tenant's property is likely in the future. However, this decision does not deny the coercive nature of the distraint; it merely compels the parties to seek judicial review before any physical taking occurs. We specifically refrain from ruling on the constitutionality of the scheme we have articulated and view our decision simply as a matter of statutory construction. Further, in a commercial setting, where an arms-length transaction is possible, a tenant might well agree to independent appraisers or methods of levy and sale that pass constitutional muster. Thus, the considerations in a residential lease arrangement need not denigrate a procedure useful in commercial exigencies.

As stated in our introduction, defendant opposes plaintiff's motion for consolidation of this complaint in replevin and defendant's complaint in assumpsit. The Landlord and Tenant Act specifically

authorizes both such actions between landlords and tenants. The action in assumpsit demands damages for the storage of the goods here sought to be replevied, as well as alleged demands for "late fees" and the rental obligations. The two suits are identical as to parties, events, times and even inferences to be drawn from these facts. Defendant asserts that "each case harbors a separate focus." Defendant also "fears that the specious, though colorful, argument of plaintiff herein regarding his alleged right to punitive and exemplary damages may easily blind the decisionmaker from making a logical and reasonable analysis of both cases." Defendant's arguments are without merit, and the court shall order consolidation.

## ORDER

And now, November 6, 1980, plaintiff's motion for partial summary judgment in the above-entitled matter is hereby granted. Defendant, Northview Heights Apartments, by its agent, Lawrence Arduini, is hereby ordered to

1. make an inventory with reasonable specificity of all property seized on July 9, 1979 at the apartment of plaintiff, George V. McCumber;

2. release to plaintiff, George V. McCumber, or his agents, all property seized on July 9, 1979 within seven days of the date of this order; and

3. provide plaintiff and the court a copy of the inventory within seven days of the date of this order.

It is further ordered that the instant case numbered 5748-A-1980 be consolidated with the complaint in assumpsit numbered 5854-A-1980. The prothonotary of Erie County, Pennsylvania is directed to enter this order of consolidation on the docket of No. 5854-A-1980.