**In re KELCO ENTERPRISES, a Partnership Consisting of Gary Earl McCray, Frank R. Flanegin and Bradley T. Erford, Debtors.**

**Mario SCOTTO, Guiseppe Scotto and Antonio Scotto, Movants**

v.

**Richard W. ROEDER, Esq., Trustee, Respondent.**

**Motion No. 87–407.**
**Bankruptcy No. 86–185E.**

United States Bankruptcy Court, W.D. Pennsylvania.

June 15, 1988.

---

Richard W. Roeder, Titusville, Pa., Trustee.

John F. Spataro, Meadville, Pa., for movants.

1. This opinion constitutes this court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052, which is made applica-

Bruce M. Johnson, Meadville, Pa., for debtors.

Robert S. Bailey, Meadville, Pa., for Park Jackson and Linda Messerly.

## OPINION [1]

WARREN W. BENTZ, Bankruptcy Judge.

### Case Summary

In December of 1984, Mario Scotto, Guiseppe Scotto and Antonio Scotto ("Scottos") entered into an agreement of sale with Frank R. Flanegin, Gary E. McCray and Bradley T. Erford as partners, doing business as Kelco Enterprises (the "debtors"). This agreement of sale provided for the sale of a Pennsylvania Retail and Restaurant Liquor License that was formerly utilized in a restaurant business known as Scotto's Pizza. The total purchase price for the liquor license was $26,000, of which approximately $13,000 was paid at the time the agreement was executed. The remaining $13,000 of the purchase price was to be paid by: a) $2,000 lump sum payment at the time the transfer was fully approved by the Pennsylvania Liquor Control Board; and b) an $11,000 promissory judgment note payable over a three year period. To secure this remaining balance, the Scottos obtained an irrevocable power of attorney authorizing the transfer of the liquor license in the event the debtors defaulted under the agreement of sale. In addition to the irrevocable power of attorney, the debtors also granted the Scottos a security interest in various items of equipment located at their place of business. The security interest in the equipment was duly perfected by filing the appropriate financing statements.

The debtors were unable to comply with the terms of the promissory note. Thus, in August of 1985, the Scottos accelerated the note, making the remaining balance of $10,629.34 due and owing. In October, 1985, the Scottos applied to the Pennsylvania Liquor Control Board to transfer the liquor

ble to this contested matter by Bankruptcy Rule 9014.

license back to themselves pursuant to the power of attorney. The Liquor Control Board had not yet acted on the transfer when an involuntary petition placed the debtors in bankruptcy six months later.

The debtors also were in default of the lease with their landlords, Park Jackson and Linda Messerly. Pursuant to the stipulation of facts, Park Jackson retook possession of the leased premises from which the debtors operated their business, Larados Restaurant on January 23, 1986. In attempted compliance with the landlords' distraint provisions, the landlords posted a Notice of Distraint on the premises on February 6, 1986 and also mailed a copy to the debtors' last known address.

The involuntary bankruptcy petition was filed on April 17, 1986. The trustee sold the liquor license for $20,000, and the equipment for $4,000, free and divested of liens, which were transferred to the proceeds, now being distributed.

By the trustee's proposed distribution and various objections, we have the following issues before us:

1. Whether the Scottos have a lien on the proceeds of the sale of the liquor license ($20,000 subject to costs).

2. As to the proceeds of sale of the equipment ($4,000 subject to costs)

(a) Do the landlords (Jackson and Messerly) have a lien and prior claim.

(b) Does the holder of the perfected security interest (the Scottos) have a lien and prior claim.

The matter is submitted to the court on briefs and stipulation of facts.

### Discussion

The Scottos argue that they have a perfected security interest in equipment sold by reason of their promissory note, security agreement and financing statements. In addition, by reason of the irrevocable power of attorney, they claim they have a secured interest in the debtors' liquor license. Lastly, because they believe they

are oversecured, the Scottos claim reimbursement for attorney fees.

Park Jackson and Linda Messerly were the landlords of the debtors. As landlords, they make no claim to the proceeds generated from the liquor license. Rather, they claim priority over Scottos' security interest in the proceeds of the equipment by reason of a landlords' distraint exercised under the authority of the Pennsylvania Landlord and Tenant Act. 68 Pa.Stat.Ann. § 250.101 et seq. (Purdon 1987).

Lastly, the trustee objects to the attorney fee portion of the Scottos' claim, since the estate did not benefit from the attorney's services.

### Landlord's Distraint

The landlords claim priority in the $4,000 generated from the sale of the equipment which was on the premises when the Notice of Distraint was posted. The assertion of this claim is governed by Pennsylvania's Landlord and Tenant Act of 1951. 68 Pa. Stat.Ann. §§ 250.302 et seq. (Purdon 1987) The statute sets forth the self help procedure a landlord must follow in order to take possession of and sell a tenant's personal property found at the leased premises for rentals in arrears. Once the landlord determines the rent is in arrears, the landlord may then subject any of the tenant's personal property (which is not exempt under § 250.401 et seq.[2]) to "distress for any rent reserved and due." 68 Pa. Stat.Ann. § 250.302 (Purdon 1987). The landlord may distrain without giving the tenant prior notice and distraint can be accomplished by either taking possession of the property or by posting a notice of distraint. The notice of distraint must state the amount of rent in arrears and a list of the property levied upon together with the date of such levy. The tenant must be given this notice within five days after making the "distress." *Id.* If the tenant or owner of the personal property distrained does not institute a replevin action within five days of receiving notice of the distraint, the landlord *may* proceed to have

2. The parties have not raised the issue as to the exempt status of any of the property seized. We therefore assume that none of the property was exempt.

the goods appraised. 68 Pa.Stat.Ann. § 250.308 (Purdon 1987). Once the goods are appraised and after six days' notice, the distrained property may be sold to satisfy the arrearages. 68 Pa.Stat.Ann. § 250.309. (Purdon 1987).

This comprehensive distraint procedure is further augmented by two other provisions which are relevant to the arguments presently before us. Sections 321 and 322 of the Landlord and Tenant Act grant the landlord a priority lien on property which is properly distrained if the property is subsequently executed upon by another creditor or if the tenant files a petition in bankruptcy. The landlord is granted priority even over a prior perfected security interest. *See In re Einhorn Brothers*, 272 F.2d 434 (3d Cir.1960). However, the landlord has no valid lien prior to distraint. *In re Uni–Lab, Inc.*, 282 F.2d 123 (3d Cir.1960). Thus, under Pennsylvania's statutory scheme, a landlord must first comply with the comprehensive distraint procedures before a lien arises and can be enforced in a bankruptcy proceeding. *See Shalet v. Klauder*, 34 F.2d 594 (3d Cir.1929); *See also Lawson v. Johnson*, 13 Pa.D. & C.3d 115 (1979).

■ In the proceeding presently before us, the primary dispute centers on whether the landlords properly complied with notice procedures within five days of the distraint. The dispute boils down to whether the debtors' property was subject to distraint (1) at the time the landlords retook possession or (2) at the time the landlords posted the notice of distraint. The landlord, Park Jackson, has stipulated that he retook possession of the premises on January 23, 1986, but that he took no action to distrain the personal property located on the premises prior to February 6, 1986. Although it is not clear from the parties' offers of proof, we assume the landlords changed the locks at the time they retook possession of the premises. In light of the foregoing, we can see no basis for the landlords alleging that no distraint occurred prior to February 6, 1986, the day on which the Notice of Distraint was posted. Changing the locks is clearly an action

of distraint. *McCumber v. Arduini*, 17 Pa.D. & C.3d 6 (1980). Based upon the assumption that the locks were changed on January 23, 1986, the requisite five day notice was not complied with, and therefore no lien for distress arose that would entitle the landlords to claim priority over the perfected security interest.

■ Even if we were to assume that no distraint occurred prior to February 6, 1986, there are several other obstacles the landlords would have to overcome. As we stated previously, the Landlord and Tenant Act is a comprehensive act which is intended to be a complete and exclusive system in itself. *See* 68 Pa.Stat.Ann. § 250.101, *Historical Note* (Purdon 1987). Once the initial distraint occurs and proper notice is given, the Act contemplates that an appraisal and sale take place within a reasonable period of time. *See e.g., McCumber v. Arduini*, 17 Pa.D. & C.3d 6 (1980). Nothing in the record indicates any action was taken during the two months after the initial distraint to effect a sale or satisfy the debt. Perhaps no action was taken by the landlords to avoid the more obvious obstacle: the constitutionality of the distraint procedure.

■ Numerous decisions have held the distraint provisions to be unconstitutional and unenforceable because they violated a tenant's rights to procedural due process. *See Ragin v. Schwartz*, 393 F.Supp. 152 (W.D.Pa.1975); *Litton Business Systems v. Paul L'Esperance, Inc.*, 387 F.Supp. 1265 (E.D.Pa.1975); *Gross v. Fox*, 349 F.Supp. 1164 (E.D.Pa.1972), *vacated* (this aspect of District Court order as overly broad) *and remanded on other grounds*, 496 F.2d 1153 (3rd Cir.1974); *Musselman v. Spies*, 343 F.Supp. 528 (M.D.Pa.1972); *and Santiago v. McElroy*, 319 F.Supp. 284 (E.D.Pa.1970). The viability of the distraint provisions today, however, is open to question in light of two recent conflicting decisions from the Third Circuit and the Pennsylvania Superior Court—the difference resulting from a determination of when state action is involved to invoke the procedural protections afforded by the due process clause.

In the earlier of the two decisions, *Luria Bros. & Co. v. Allen*, 672 F.2d 347 (3d Cir.1982), the court upheld the constitutionality of distraint provisions, and held that no state action is involved when a distraint levy is made by a private landlord and not by a constable or other state officer. Thus, the due process clause was not implicated. The underlying reason being that the "Commonwealth's authorization of procedures for obtaining relief does not of itself convert into a state actor one who avails himself of those procedures." *Id.* at 353 [relying principally on the Supreme Court's decision in *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)].

The later Pennsylvania Superior Court's decision, on the other hand, in *Allegheny Clarklift Inc. v. Woodline Industries of Pennsylvania, Inc.*, 356 Pa.Super. 269, 514 A.2d 606 (1986), relies on a more recent Supreme Court decision to invalidate the distraint provisions. In a well-reasoned opinion, Judge Montemuro, writing for the court, sets forth a succinct historical analysis of the constitutional challenges to Pennsylvania's statutorily prescribed distraint procedures. In its analysis, the *Allegheny Clarklift* court noted that a more recent Supreme Court decision clarified the prior *Flagg Bros.* decision.

The *Allegheny Clarklift* court reasoned that the uncertainty created by *Flagg Bros.* in determining whether there was some delegation of a sovereign function to constitute state action, was removed by the Supreme Court in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), which re-emphasized the continuing significance of the principle enunciated in *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed. 2d 349 (1969).[3] Therefore, the *Allegheny Clarklift* court affirmed the lower court, holding the distraint provisions unconstitutional. In accord with the *Allegheny Clarklift*, we find that Park Jackson and Linda Messerly, the landlords, have no lien. As so aptly put by the *Allegheny Clarklift* court:

> "the state having once authorized private action in conjunction with its own officials, must ensure at the outset that the procedural scheme to be followed is beyond constitutional reproach ... Having been found nugatory itself, the Act cannot be relied upon to confer legitimacy ..."

514 A.2d at 609 (1986).

We also note that even if the landlords had performed every act necessary under Pennsylvania law to the validity of the lien of distraint for rent, it would be avoidable by the *Trustee* under Bankruptcy Code § 545(4). However, the trustee has not sought to avoid the lien because the estate would not benefit from such avoidance. Since we have determined that the landlords' attempt to obtain a lien was ineffective under state law, we need not determine whether the Scottos, as holders of a perfected security interest in the goods, could assert the trustee's right to avoid such landlords' lien.

### Secured Interest in a Liquor License

■ The Scottos argue that the irrevocable power of attorney executed in conjunction with the initial transfer of the liquor license to the debtors grants them a secured interest in that license. We need not address the unsettled question as to status of a Pennsylvania liquor license at the time the parties consummated their transaction, for however innovative the Scottos were in drafting the power of attorney for purposes of securing the indebtedness, that interest was never perfected by filing the instrument or financing statements in the appropriate locations. As such, the power of attorney is a secret lien and is therefore unenforceable in bankruptcy. The Scottos' claim as represented by

---

**3.** The principle was that the due process clause is implicated whenever officers of the state act jointly with a creditor in securing property in dispute. As the *Allegheny Clarklift* court pointed out, the focus of this principle was on the terms of the statute and its constitutionally deficient procedure (the *Sniadach* case involved garnishment and prejudgment attachment procedures) rather than the identity of the actor and whether there was some overt official action involved.

the irrevocable power of attorney shall be classified as a general unsecured claim and shall share pro-rata with the remaining unsecured creditors in the proceeds generated from the sale of the liquor license.

In light of the foregoing, Scottos' claim for attorney fees shall be disallowed. Because Scottos claim in the proceeds of the liquor license has been relegated to the status of a general unsecured claim, the underlying basis for attorney fees is no longer present. The trustee's objections shall therefore be sustained.

An appropriate order will be issued.